## UPDIKE *vs.* ABEL.

In an action by a purchaser, against the vendor, to recover *damages* for fraudulent representations of the latter, upon a sale and purchase of land, the evidence showed that during the negotiations the plaintiff informed the defendant that he would not purchase lands held under a tax title; and that the defendant represented that he "had good title, and the best kind of title" to the lands in question; that they had been selected as choice lands, many years before, by one who had great opportunities of locating choice lands, and that such person had conveyed some of the lands so selected by him, to his brother, and the latter had conveyed them to the defendant. The falsity of the representations was clearly proved, and the judge charged the jury that there was no dispute that the lands were held by the defendant under tax titles; and that if the defendant made the representations proved, knowing that the title was a tax title, it would be a fraud. *Held* that the charge was correct; and that a verdict having been rendered for the plaintiff, in accordance with it, and upon the weight of evidence, a new trial was improperly granted.

Words used by a vendor, during a negotiation for the sale of land, respecting the title, and susceptible of sustaining a separate allegation of fraud, in the complaint, but not inserted therein, may be used as evidence to sustain the allegations that are contained in the complaint, if employed during the same conversation with the latter allegations, and incapable of separation from them.

Evidence of representations made by the vendor, equivalent to those charged in the complaint, may be received. Proving those not alleged is only proving the *animus* of those that are alleged.

If there is any foundation for the objection that a recovery has been had upon grounds not alleged in the complaint, it should be made in season. After judgment, it is too late for the unsuccessful party to avail himself of it.

Under the system of practice established by the Code, in order to entitle a defendant to a new trial, on the ground that the plaintiff has not proved the case made by his complaint, it must appear that the cause of action is unproved in its entire scope.

THIS is an appeal from an order made by the judge before whom the action was tried, granting a new trial upon a case and exceptions. The motion was made, also, upon the ground of surprise and newly discovered evidence. The action was for fraud charged to have been committed by the defendant, upon the plaintiff, in the sale to the latter, of lands in the State of Michigan.

The allegations of fraud were, in substance, that the defendant represented that he had a good title, and the best kind of title to said lands. That said lands had been located some thirty years ago, by one " Tift" Jerome, who had great opportunities for locating choice lands. That said Tift Jerome had conveyed to his brother James Jerome, and the latter had conveyed them to the defendant. That all these representations, made by the defendant, were false, and known by the defendant to be false, when made, and were made with intent to deceive. That the plaintiff, relying upon these representations as true, was induced to enter into an agreement to purchase an undivided half of 1000 acres of such lands, and had paid about $2000 thereon.

There were other allegations of fraud and of representations as to the value of the lands, &c., not necessary to be stated. The contract was admitted, and the payments, but all the allegations of fraud denied. The action was tried at the Tompkins circuit, in January 1868, and a verdict rendered for the plaintiff, for the consideration money and interest, $2302.89, and judgment entered thereon; and in March 1869, at a special term, before the same judge, an order was made granting a new trial, costs to abide the event. All the facts material to be stated appear in the opinion.

*Beers & Howard,* for the plaintiff.

*Ferris & Dowe,* for the defendant.

*By the Court,* POTTER, J. As it appears from the opinion of the learned judge, the motion for a new trial was granted, not upon the ground of surprise or newly discovered evidence, but upon the error of the court in refusing to nonsuit on the trial. The learned judge was clearly right in not granting the order upon the first mentioned ground, and that point is not now before us. This narrows the review in the case to the question whether the judge correctly or incorrectly refused to nonsuit, on the trial.

In the charge of the learned judge to the jury, but two points were presented to them. 1st. Whether the defendant fraudulently represented the title which he held to the lands. 2d. Whether the plaintiff, after discovering the fraud, repudiated the contract with reasonable promptness. Upon both these points the charge was clear, and is without exception upon either side.

Upon this review we are to assume that the judge correctly laid down the law. There is but one point in the case left to be examined, and that is, the exception taken upon the motion to nonsuit; and this is important, because it is upon the supposed error committed by the judge upon this motion to nonsuit that a new trial was ordered. When the plaintiff rested, the defendant moved for a nonsuit, on the ground that the plaintiff, by his evidence on commission, showed a good title in the defendant. The judge said: "I am inclined to think the case should go on. The party may repudiate the contract and recover back the money paid, but not damages." The defendant's counsel objected that there was no averment in the complaint that the defendant represented the title not to be a tax title, and that that part of the testimony was therefore not applicable. The motion was denied, and the defendant excepted. Was this motion denied upon what the plaintiff asked, or upon what the judge replied? If upon the former, it was clearly right.

Updike *v.* Abel.

If upon the whole matter stated, then the decision was right upon one proposition; and if wrong upon the other, the defendant's exception being to the good as well as the bad, must also fail. Let this be analyzed. The defendant's motion to nonsuit was upon a question of fact, to wit: what was shown by the commission. He made no other motion. This was all that could be denied. In making up his case he has omitted this testimony upon commission. The judge denied his motion. How can we say this was error, in the absence of the testimony? The reply of the judge to this motion was that the case should go on; and then he proceeds to lay down a principle of law. No exception is made to this; or, if one was made, in the absence of the testimony referred to, we cannot say he was wrong. The defendant then objected to the case for want of an averment in the complaint; but it does not there appear that he moved for a nonsuit on that ground; nor that the motion was denied upon that objection. The burthen is upon the defendant to show that an error has been committed; this court cannot look beyond the case before us. But let us omit technicalities.

It is but justice, however, to the learned judge who granted a new trial, to say that it was granted upon the ground (as appears from his opinion) that there was a failure on the part of the plaintiff to make out any cause of action alleged in the complaint. He must, therefore, have regarded the exception of the defendant as covering this point, though it does not.

With great deference to the learned judge, I am compelled to differ with him in this view, even upon the assumption that there is a proper exception to cover the ruling. I entirely concur in the views of the law so clearly laid down by him in his charge to the jury. The question of fraud was entirely a question for the jury; and also, as it appears from the case, the weight of evidence on the question of fraud was as the jury found it.

Updike *v.* Abel.

Let us take a brief review. The defendant (as the evidence shows, or tends to show, and as the jury have found,) represented "that he had good title, and the best kind of title" to the lands in question; that they had been selected as choice lands many years before, by one who had great opportunities of locating choice lands; that Jerome, who had thus selected these lands, had conveyed some of them to his brother, and that brother had conveyed them to the defendant. There was also evidence that during the negotiations between the parties, the plaintiff distinctly informed the defendant that he would not purchase lands under a tax title. All this testimony was clearly presented to the jury by the learned judge, who also informed them that there was no dispute in regard to the evidence that the defendant held the lands under a tax title. He also informed the jury "that if the defendant made the representations proved, knowing that the title was a tax title, it would be a fraud." And also he said "that there is evidence here tending to show that the plaintiff had sufficient reason for insisting upon a title not a tax title; and the evidence shows (he says) that these premises, or a portion of them, are in possession of a person or persons claiming them under a United States title, and that this tax title is supervened by that title, and stands in a position to defeat the tax title; and *that* may be a sufficient reason why the plaintiff has been intending *not* to take a tax title." "Now," said the judge, "did he bargain for a title not a tax title, so that he has been defrauded by the defendant?" In all this, it seems to me, the case was put to the jury fairly, as to the facts, and upon sound legal propositions, satisfactory to both parties, as is manifest by the absence of an exception. And a verdict was rendered in accordance with this charge, and upon the weight of evidence.

Upon what ground, then, was this verdict and judgment set aside? This presents the only point in the case. We

must see what reason the learned judge gives. He thinks he committed an error in refusing to nonsuit. In this I think he was mistaken. He says, although the plaintiff proved the representations set forth in his complaint, there was no proof of their falsity. I think this a still greater mistake. There is evidence that the defendant said these lands were selected many years before, by one who had great opportunities for selecting choice lands. The falsity of this was clearly proved, and the judge even told the jury that there was no dispute that these lands had been purchased under tax titles. The evidence on this point is as follows: " I told him if I could get a good title I would not mind buying some of it. He said he had the best kind of title. He said he would be rather a foolish man to take a tax title; he was very particular to get a good title; that Tift Jerome had located this land, and let Jim (Jerome) have it, and he (defendant) got it of him; that Tift was a surveyor, and had located this land when surveying, and he would mark it, and aftewards go to the office and locate this particular piece." This was a most material representation. There was evidence clearly showing this statement to be false. It was further testified, that the plaintiff went out to Michigan to inquire about the lands, and on finding the title to be only a tax title, and parties in possession, claiming under a United States title, he returned and told the defendant, saying " he had found out that he (defendant) didn't really own any land there; that he (the plaintiff) wanted defendant to secure him for the money, or pay it back, or give a deed as he agreed to." Defendant told me to keep still, and said " I can sell the land; I have traded away the other half, and can sell that, if you keep still." If the jury believed this testimony, as they had a right to do, it was an implied admission of the fraud. It was, I think, clearly error to say the falsity of the representations was not proved.

But the learned judge, as I understand him, puts the

case upon the ground that if these representations were proved false, it was made out by proving *that the title was a tax title*, and because those words, though proved, were not set forth in the complaint as one of the false represent- ations, the plaintiff should not be permitted to recover upon the words alleged. I think there are two perfect answers to this position.

*First.* This evidence was received on the trial without objection, and no motion was made to strike it out, and no request that the judge should charge the jury that it was not legitimate evidence. Besides, it was a part of the language used by the defendant at the interview between the parties, at the time the false representations were made; and it could not have been separated from the other; it was a part of one continuous connected conver- sation and statement. One example will show its impos- sibility. In the main interview, the witness states, the " plaintiff asked him what title he had. Defendant said he had the best kind of title. The plaintiff asked him if it was a tax title. The defendant said no, it was the best kind of title." How could this be stricken out?

*Second.* These words, even if susceptible of sustaining a separate allegation in the complaint, may also be used as evidence to sustain other allegations that were con- tained in it; and if used as evidence to sustain another allegation, to wit, the falsity of the statement that *his title was the best kind*, it is no ground for granting a new trial. A perfect cause of action was made out upon the other allegations; and there is no variance between the allegations and the proofs, even though an additional alle- gation of false representations might also have been sus- tained, by counting upon these words.

I am not able, therefore, to concur with the learned judge in supposing that a recovery was had upon allega- tions not contained in the complaint. On the contrary, the allegations contained in the complaint were the equiv-

alent of the words proved, and which were but another form of charging the same fraud. Both were fraudulent representations, and in effect were the same thing, and proving the one not alleged was only proving the *animus* of the other. The plaintiff was not bound to set out every statement of equivalent words.

If there was any soundness in this objection of the defendant, even if made earlier, certainly after judgment it was too late to avail himself of it. Under our system of practice established by the Code, in order to entitle the defendant to a new trial, it must appear that the cause of action was unproved, in its entire scope. This does not appear, but, as I think, clearly the contrary. (*Hamilton* v. *Gridley*, 54 *Barb.* 549.)

The order of the special term, granting a new trial, I think, should be reversed.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, April 4, 1871. *Miller*, P. J., and *Potter*, Justice.]